## UNITED STATES DISTRICT COURT

## DISTRICT OF COLUMBIA

| | |
|---|---|
| **KGB INTERNATIONAL, INC., a California corporation, CHANNEL IMPORTS, LLC, an Oregon limited liability company and SOUTH MILL DISTRIBUTION, INC. d/b/a ATLANTA SOUTH MILL DISTRIBUTION, LLC a Georgia Limited Liability Company** )<br><br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) | **Case No.:**<br><br><br>**PLAINTIFFS' MEMORANDUM IN SUPPORT OF MOTION FOR PRELIMINARY INJUNCTION** |
| **Plaintiffs,** )<br> )<br>**vs.** )<br> )<br>**SOUTHERN SOLUTIONS, INC. d/b/a** )<br>**SOUTHERN SOLUTIONS PRODUCE,** )<br>**LLC, a North Carolina corporation and** )<br>**TANIKKA WATFORD, an individual,** ) | |
| **Defendants.** | |

Plaintiffs, KGB International, Inc. ("KGB"), Channel Imports, LLC ("Channel") and South Mill Distribution, Inc. d/b/a Atlanta South Mill Distribution, LLC ("South Mill") (referred to hereafter as "Plaintiffs"), submit this, their Memorandum in Support of an Motion for Preliminary Injunction pursuant to Rule 65(a). Submitted herewith in support of Plaintiffs' motions is the Declaration of Kenneth C. Galloway, President for KGB and Channel, the Declaration of Dave Bialek, Salesman for South Mill.

## INTRODUCTION

Plaintiffs are engaged in the business of buying and selling wholesale quantities of perishable agricultural commodities (hereafter "Produce") in interstate commerce.

Defendant, Southern Solutions, Inc. d/b/a Southern Solutions Produce, LLC

1

("Southern Solutions"), upon information and belief, is a North Carolina corporation with its offices and principal place of business in Washington, DC, and is and was at all times pertinent herein, a dealer and commission merchant and subject to the provisions of the Perishable Agricultural Commodities Act of 1930, as amended, 7 U.S.C. §§499a-499t ("PACA").

Plaintiffs seek enforcement of the statutory trust established under PACA, 7 U.S.C. §499e(c), and the regulations issued pursuant thereto, 7 CFR Part 46, 49 Fed. Reg. 45735 (Nov. 20, 1984). The Court's jurisdiction is invoked pursuant to 7 U.S.C. §499e(c)(5).

## THE PACA TRUST

The PACA was enacted in 1930 to "suppress unfair and fraudulent practices in the marketing of fruits and vegetables in interstate and foreign commerce" and "provides a code of fair play . . . and aid to [agricultural] traders in enforcing their contracts." 49 Fed. Reg at 45737.

In 1984, the PACA was amended to assure that suppliers of produce are paid by imposing a statutory trust on all produce-related assets, such as the produce itself or other products derived therefrom, as well as any receivables or proceeds from the sale thereof, held by agricultural merchants, dealers and brokers. 7 U.S.C. §499e(c)(2); See also, Tanimura & Antle, Inc. v. Packed Fresh Produce, Inc., 222 F. 3d 132 (3rd Cir. 2000). The trust must be maintained for the benefit of the unpaid suppliers, sellers or agents who provided the commodities until full payment has been made. Id. The trust provision thus offers sellers of produce, "a self-help tool that will enable them to protect themselves against the abnormal risk of losses resulting from slow-pay and no-pay practices by

buyers or receivers of fruits and vegetables." 49 Fed. Reg. at 45737.

Failure to maintain the trust and make full payment promptly to the trust beneficiary is unlawful. 7 U.S.C. §499b(4). Produce dealers "are required to maintain trust assets in a manner that such assets are freely available to satisfy outstanding obligations to sellers of perishable agricultural commodities[,]" and any act or omission inconsistent with this responsibility, including dissipation of trust assets, is proscribed. 7 CFR §46.46(e)(1). Dissipation of trust assets, defined as the diversion of trust assets or the impairment of a seller's right to obtain payment (7 CFR §46.46(b)(2)), is forbidden. 7 CFR § 46.46(e)(i).

## ENTITLEMENT TO TEMPORARY
## RESTRAINING ORDER WITHOUT NOTICE

In seeking relief pursuant to Rule 65 of the Federal Rules of Civil Procedure, Plaintiffs rely exclusively upon the Declaration of Kenneth C. Galloway, President for KGB and Channel, and the Declaration of Dave Bialek, Salesman for South Mill. These Declarations clearly demonstrate that:

a)    Plaintiffs, KGB and Channel, have not been paid for $41,817.86 worth of produce that they sold to Defendant Southern Solutions. (See, Declaration of Kenneth C. Galloway filed contemporaneously herewith.)

b)    Plaintiff, South Mill, has not been paid for $74,414.90 worth of produce sold to Defendant Southern Solutions. (See, Declaration of Dave Bialek filed contemporaneously herewith.)

c)    Tanikka Watford, President of Southern Solutions, has demonstrated to

Plaintiffs Southern Solutions' inability to pay for Plaintiffs' Produce as required and has failed to pay despite repeated demand. (See, Declaration of Kenneth C. Galloway and Declaration of Dave Bialek filed contemporaneously herewith.)

d)      Watford has indicated that she was embezzled by a former employee and that she does not have the ability to pay for the produce received from Plaintiffs. (See, Declaration of Kenneth C. Galloway filed contemporaneously herewith.)

e)      On February 2, 2006, Watford sent Plaintiffs', KGB and Channel, President, Kenneth C. Galloway, an electronic mail message stating the following: "I will send you something as soon as I get something, I switched everything over and now I'm waiting to get some form of payment into my account, that is my problem they have not deposited anything in yet, I have done all the poper [sic] paper work and spoke with tons of people." (See, Declaration of Kenneth C. Galloway filed contemporaneously herewith.)

f)      Plaintiff, South Mill, was told by Tanikka Watford's step-father, Jesse Moore, that Southern Solutions could not pay its creditors due in part to the military's failure to pay Southern Solutions for the produce it purchased. (See, Declaration of Dave Bialek filed contemporaneously herewith.)

All of this evidence indicates that the Defendant Southern Solutions is in severe financial jeopardy and the PACA trust assets are being threatened with dissipation. Frio Ice, S.A. v. Sunfruit, Inc., 918 F.2d 154 (11th Cir. 1990).

Since it is all but impossible to recover trust assets once there has been dissipation, H.R. Rep. No. 543, 98th Cong., 2d Sess. 4 (1983), reprinted in 1984 U.S. Code Cong. & Admin. News, 405, 411, J.R. Brooks & Son, Inc. v. Norman's Country Market Inc, 98 B.R.

47, 50 (Bkrtcy. N.D. Fla. 1989), the loss to Plaintiffs and other trust creditors would be irreparable. Continental Fruit v. Thomas J. Gatziolis & Co., 774 F.Supp. 449 (N.D. Ill. 1991); Gullo Produce Co., Inc. v. Jordan Produce Co., Inc, 751 F.Supp. 64 (W.D. Pa. 1990).

Caselaw supports Plaintiffs' entitlement to an immediate injunction requiring non-dissipation of trust assets when the produce supplier is not paid. Frio Ice, S.A., 918 F.2d at 159; ("Upon a showing that the trust is being dissipated or threatened with dissipation, a district court should require the PACA debtor to escrow its proceeds from produce sales, identify its receivables, and inventory its assets."); Dole Fresh Fruit Co. v. United Banana Co., 821 F.2d 106 (2d Cir. 1987); In re Richmond Produce Co., Inc., 112 B.R. 364, 367 (Bkrtcy. N.D. Cal. 1990).

The foundational principle for preliminary relief is that "it is a sound idea to maintain the status quo ante litem, provided that it can be done without imposing too excessive an interim burden upon the defendant." Blackwelder Furniture Company v. Seilig Manufacturing Co., Inc., 550 F.2d 189, 195 (4th Cir. 1979). See also, Federal Leasing, Inc. v. Underwriters at Lloyd's, 650 F.2d 495, 499 (4th Cir.1981). The Fourth Circuit has adopted a multi-factor, "balance-of-hardship" test for evaluating the propriety of preliminary injunction relief. Under that test, the two more important factors are those of probable irreparable injury to plaintiff without a decree and of likely harm to the defendant with a decree. If that balance is struck in favor of plaintiff, it is enough that grave or serious questions are presented; and plaintiff need not show a likelihood of success. Always, of course, the public interest should be considered. Blackwelder, 550 F.2d at 196.

There are also a number of unreported cases from the Fourth Circuit supporting the issuance of injunctive orders, even without notice, to halt dissipation of trust assets. See Orders issued by United States District Courts in the Fourth Circuit, attached hereto as Composite Exhibit A: Dole Fresh Fruit Company v. Price Bananas, Inc., (D.S.C. – Case No. 3:00-330 (Jan. 26, 2000)); Fresh American, Inc. dba Tomahawk Produce v. Asheville Produce & Processing Limited, Inc., (W.D.N.C. – Case No. 1:98cv188-T (Aug. 26, 1998)); and Tony Vitrano Company v. A&E Foods, Inc., (D.Md. N.D. – Case No. 6-96-1278 (Jan. 4, 1996)).

The facts in this case show that Plaintiffs are entitled to the requested relief.

1. **Balance of Hardship**

Plaintiffs' Declarations demonstrate that Plaintiffs are owed for non-payment of produce and have properly preserved their trust claims in the aggregate amount of $115,632.76 as required under PACA and implementing regulations. While Defendants have no defense to these claims under PACA, Plaintiffs will almost certainly continue to suffer harm.

In cases interpreting the rights of PACA creditors, courts in other jurisdictions have recognized that without injunctive relief, Plaintiffs faced with an insolvent debtor will not receive either the trust assets or the proceeds of such assets. See, Gullo Produce Co, 751 F.Supp. at 67. This has been found to constitute irreparable harm. Id.; See also, Frio Ice, 918 F.2d at 159 ("[t]he legislative history [of the PACA] noted that once the trust is dissipated it is almost impossible for the beneficiary to obtain recovery"). A moving party need only show actual dissipation or the threat of dissipation of the PACA trust in order

to obtain injunctive relief and a segregation of the trust proceeds. Frio Ice, 918 F.2d at 159, n. 8.

In the instant case, injunctive relief will force Defendants to cease dissipation of the PACA trust, prevent non-trust creditors from obtaining trust assets ahead of the trust's beneficiaries as well as other produce creditors not entitled to remedies under PACA, and require Defendants to return the trust to a fully-funded level sufficient to satisfy the claims of qualified beneficial interests in full. In short, it will force Defendants to comply with the law. Because it is virtually impossible to recover trust assets once they have been dissipated, the loss to Plaintiffs and other trust creditors is irreparable.

The Defendants, however, cannot be harmed by the issuance of an injunction because the relief Plaintiffs seek is merely to force the Defendants to comply with their pre-existing obligations under federal law –to preserve the PACA trust assets for the benefit of PACA beneficiaries and make "full payment promptly" on all produce related invoices. As stated above, numerous courts have recognized the fact that once the PACA trust assets are dissipated, unpaid trust claimants in Plaintiffs' position are extremely unlikely to recover any portion of its beneficial interest in the trust, a result at odds with the express purpose of the statute. Clearly the balance favors Plaintiffs.

2.    **Public interest**

The strong preference for PACA trust creditors, which Congress expressed in the 1984 trust amendments to the PACA, clearly demonstrates the public interest at stake in this case. These safeguards were established in order to assure payment to the producers of perishable agricultural products. There can scarcely be a more vital public concern

than the economic security of the nation's food supply.  This supply and distribution chain consists of the very same growers, producers and distributors that Congress sought to protect by enacting this legislation.  To deny Plaintiffs the requested relief would be to erode the protection Congress guaranteed these parties by passing the PACA and the regulations promulgated thereunder.  Therefore, the requested injunction is clearly in the public interest.

For the foregoing reasons, Plaintiffs respectfully submit that their Motion for Preliminary Injunction should be granted.

//

//

//

//

//

//

//

//

Respectfully submitted this 14th day of February, 2006.

**PEPPER HAMILTON, LLP**

MEUERS LAW FIRM, P.L.

By: _____

8

Lawrence H. Meuers, Esq.
Fla. Bar No. 0934879
Aaron J. Pruss, Esq.
Fla Bar No. 0015656
5395 Park Central Court
Naples, FL 34109
Telephone: (239) 513-9191
Facsimile:  (239) 513-9677
apruss@meuerslawfirm.com

Edward M. Andries, Esq.
DC Bar No. 460526
Charles H. Carpenter, Esq.
DC Bar No. 432004
Pepper Hamilton, LLP
Hamilton Square
600 Fourteenth Street, N.W.
Washington, DC 20005-2004
Tel: (202) 220-1251
Fax: (202) 220-1665

Attorneys for Plaintiffs