Edward M. Andries, Esq.
Pepper Hamilton, LLP
Hamilton Square
600 Fourteenth Street, N.W.
Washington, DC 20005-2004
Tel: (202) 220-1251

Attorneys for Plaintiff

**UNITED STATES DISTRICT COURT**
**DISTRICT OF COLUMBIA**

| | |
|---|---|
| KGB INTERNATIONAL, INC., a California corporation, and CHANNEL IMPORTS, LLC, an Oregon limited liability company, <br><br> Plaintiffs, <br> vs. <br><br> SOUTHERN SOLUTIONS, INC. d/b/a SOUTHERN SOLUTIONS PRODUCE, LLC, a North Carolina corporation and TANIKKA WATFORD, an individual, <br><br> Defendants. | Case No.: <br><br> **DECLARATION OF KENNETH C. GALLOWAY IN SUPPORT OF PLAINTIFFS' MOTION FOR PRELIMINARY INJUNCTION** |

I, Kenneth C. Galloway, being duly sworn, depose and state as follows:

1. I am the President of KGB International, Inc. ("KGB") and Channel Imports, LLC ("Channel") (KGB and Channel will be collectively referred to as the "Plaintiffs") and, in such capacity, file this Declaration in support of Plaintiffs' Motion for Preliminary Injunction against Southern Solutions, Inc. d/b/a Southern Solutions Produce, LLC ("Southern Solutions") and Tanikka Watford ("Watford"), individually, (Southern Solutions and Watford will be collectively referred to as the "Defendants").

2. I am authorized to make this Declaration and am competent to testify at trial regarding the statements made herein.

3. Plaintiffs, KGB and Channel, seek a Preliminary Injunction ("P.I.") in this

matter to preserve their beneficial interest in the statutory trust created under the Perishable Agricultural Commodities Act of 1930 as amended, 7 U.S.C. §§499a-499t (the "PACA"). The PACA trust assets are now in the Defendants' possession and control.

## ACCOUNT HISTORY

4. KGB is a PACA licensee (PACA License No. 19990727).

5. Channel is a PACA licensee (PACA License No. 20060217).

6. KGB and Channel sold perishable agricultural commodities (hereinafter "Produce") to Southern Solutions as described in the chart included with attached Composite Exhibit "A." As reflected on the chart, Southern Solutions received and accepted the Produce and no adjustments have been made on the invoice amount except as listed. This chart uses the following terms, which shall have the following described meaning:

   A. **Invoice Number** refers to the number under which the commodity was sold to Southern Solutions.

   B. **Date of Transaction** refers to the date that begins the payment term between KGB, Channel and Southern Solutions.

   C. **Date of Shipment** refers to the date Produce was delivered to Southern Solutions.

   D. **Invoice Amount Due** refers to the total amount owed and remaining unpaid, regardless of whether the particular invoice amount qualifies for trust protection.

   E. **Trust Amount** refers to the amount owed and remaining unpaid that is entitled to trust protection due to KGB's and Channel's satisfaction of the applicable PACA regulations.

7. Included in Composite Exhibit "A" are true and accurate copies of all the invoices that contained the statutory trust language.

8. Each invoice was properly addressed and mailed to Southern Solutions via U.S. Mail, postage pre-paid, in the ordinary course of business as indicated on each invoice included with Exhibit "A."

9. The Produce Plaintiffs sold to Southern Solutions consisted of various produce, including, but not limited to, grapes, broccoli, celery, tomatoes, plums, peaches, nectarines, etc., all of which were shipped in interstate commerce and, accordingly, subject to the provisions of the PACA.

10. Southern Solutions has not paid the invoices and, upon information and belief, Southern Solutions does not have sufficient funds to fully satisfy Plaintiffs' PACA trust claims in full, as required under the PACA. This dissipation of the trust is due to Southern Solutions' diversion of the PACA trust assets to the claims of other non-PACA trust creditors that are subordinate to the PACA trust claims of Plaintiffs or to Watford for her own personal use.

## EVIDENCE OF TRUST DISSIPATION

11. Because Southern Solutions has been unable to satisfy Plaintiffs' PACA trust claims, I, on behalf of Plaintiffs, began investigating Southern Solutions' financial condition. All of the information I have discovered concerning the financial condition of Southern Solutions has led me to believe that Southern Solutions has failed to maintain sufficient PACA trust assets to pay the amounts owed to Plaintiffs and is dissipating those assets.

12. Plaintiffs have been doing business with Southern Solutions since December of 2005. Since that time, Plaintiffs has developed and maintained an ongoing business relationship with Southern Solutions.

13. Southern Solutions accepted at least five (5) truckloads of varying types of produce from Plaintiffs.

14. In January of 2006, I realized that Southern Solutions had not made payment on its outstanding invoices, and as a result, the outstanding balance continued to rise.

15. On January 27, 2006, I was in South Carolina visiting chain store accounts and

decided to visit Southern Solutions in Staley, North Carolina.

16. While waiting for Tanikka Watford on the 27th of January, I spoke with two individuals, one of whom—Pat Hogan from Penske Truck Leasing—was there to repossess Penske Truck Leasing's equipment for non-payment.

17. Mr. Hogan indicated to me that Watford told him she had been embezzled by her accountant, in the amount of One Hundred Thousand Dollars ($100,000.00) and that is why her Twenty Thousand Dollar ($20,000.00) check was returned Non-Sufficient Funds ("NSF").

18. I actually met with Watford on the 27th and was told by her, directly, that here accountant embezzled Four Hundred Fifty Thousand Dollars ($450,000.00) from her.

19. On February 2, 2006, Watford sent me an electronic mail message stating the following "I will send you something as soon as I get something, I switched everything over and now I'm waiting to get some form of payment into my account, that is my problem they have not deposited anything in yet, I have done all the poper [sic] paper work and spoke with tons of people." [Exhibit "B" attached hereto.]

20. Based upon my conversations and electronic mail correspondence with Watford, I believe that no further payments will be forthcoming because I was told by Watford that Southern Solutions will not be able to pay Plaintiffs until she receives funds from another sale.

21. Based upon the foregoing, I believe that Southern Solutions has failed to maintain sufficient trust assets to satisfy its obligations to Plaintiffs, and is dissipating PACA trust assets.

22. Based on my personal experience, it appears that Southern Solutions has and is continuing to dissipate the PACA trust to the point that Southern Solutions is unable to satisfy not only the amounts owed to Plaintiffs, but also the claims of other similarly situated PACA trust claimants who may be unaware of the dissipated condition of the PACA trust. Thus, unless

Southern Solutions is forced to satisfy its non-Produce debt and other operating expenses out of its profit margin and not by dipping into the PACA trust assets, Southern Solutions will continue to aggravate the situation through further dissipation of the PACA trust.

23. Based on my experience in the collection of Produce related receivables, I have found that when a situation has deteriorated to this extent, it inevitably leads to the liquidation of the entity charged with maintaining the PACA trust. My experience has also proven such dissipation will undoubtedly continue until any hope of recovery is lost, thereby rendering the trust protection under the PACA a meaningless formality.

**I declare, under penalty of perjury as set forth in 28 U.S.C. § 1746, the foregoing statements to be true and correct.**

_____
Kenneth C. Galloway, President

Declaration of Ken Galloway in Support of Plaintiff's Motion for Temporary Restraining Order       5