UNITED STATES DISTRICT COURT
DISTRICT OF COLUMBIA

| | |
|---|---|
| KGB INTERNATIONAL, INC., a California corporation, CHANNEL IMPORTS, LLC, an Oregon limited liability company and SOUTH MILL DISTRIBUTION, INC. d/b/a ATLANTA SOUTH MILL DISTRIBUTION, LLC a Georgia Limited Liability Company<br><br>      Plaintiffs,<br>vs.<br><br>SOUTHERN SOLUTIONS, INC. d/b/a SOUTHERN SOLUTIONS PRODUCE, LLC, a North Carolina corporation and TANIKKA WATFORD, an individual,<br><br>      Defendants. | Case No.: 06-272(RWR) |

**PLAINTIFFS' MOTION TO CONTINUE ACTION AGAINST INDIVIDUAL DEFENDANT, TANIKKA WATFORD**

COME NOW Plaintiffs, KGB International, Inc. ("KGB"), Channel Imports, LLC ("Channel") and South Mill Distribution, Inc. d/b/a Atlanta South Mill Distribution, LLC ("South Mill"), and, in light of the corporate Defendant, Southern Solutions, Inc. d/b/a Southern Solutions Produce, LLC's, ("Southern Solutions") Voluntary Chapter 7 Petition filing in the United States Bankruptcy Court for the Middle District of North Carolina, request that this matter be bifurcated and be allowed to proceed against Defendant Ms. Tanikka Watford, and in support thereof, state as follows:

1.  On or about February 14, 2006, Plaintiffs filed a Complaint in the United States District Court for the District of Columbia against Defendants.

1

2.      The Defendants, both corporate and individual, were personally served in Washington, DC on February 24, 2006.

3.      On or about February 24, 2006, corporate Defendant, Southern Solutions, filed a Voluntary Chapter 7 Petition in the United States Bankruptcy Court for the Middle District of North Carolina.

4.      As far as we know, Defendant, Ms. Watford, has not filed a personal bankruptcy action as of the date of this filing.

5.      The Automatic Stay, as applied to the corporate Defendant, should not impede this cause of action as it relates to Ms. Watford.

6.      Plaintiffs wish to proceed against Ms. Watford, in spite of the statutory stay relating to the corporate Defendant, Southern Solutions.

I. **PERSONAL LIABILITY OF TANIKKA WATFORD**

  **A. Summary of the Perishable Agricultural Commodities Act of 1930, as amended, 7 U.S.C. §§ 499a-499t**

PACA was enacted in 1930 "to suppress unfair and fraudulent practices in the marketing of fruits and vegetables in interstate and foreign commerce." 49 Fed. Reg. 45737 (Nov. 20, 1984). Thus, PACA requires produce dealers to make "full payment promptly" for any produce they purchase. 7 U.S.C. §499b(4). In 1984, the PACA was amended to "increase the legal protection for unpaid sellers and suppliers of perishable agricultural commodities until full payment of sums due has been received by them. (Emphasis added,) 1984 *U.S. Code Congo & Admin News* 406; See also *Frio Ice. S.A. v. Sunfruit. Inc.*, 918 F.2d 154, 159 (11th Cir.

2

1990) (". . . the central purpose of Section 499e(c) is to ensure payment to trust beneficiaries.").

To carry out this intent, §499e(c) imposes a statutory trust that has all four elements of a trust: a trustee, trust assets, trust beneficiaries and a trust purpose. The "purpose" of the PACA trust is to protect unpaid produce sellers. The "trustee" is the produce buyer. The "trust assets" are the buyer's produce inventory, products made from produce and proceeds from the sale of produce or products. The "trust beneficiaries" are all unpaid produce sellers, who properly preserved their rights as PACA trust beneficiaries. 7 U.S.C. §499e(c)(2); 7 C.F.R. §46.46. The trust arises upon the commencement of the produce buyer's business, and is continually in existence throughout the life of that business. *In re Kornblum & Co.. Inc.,* 81 F .3d 280 (2nd Cir. 1996); *In re Atlantic Tropical Market Corp.*, 118 B.R. 139, 142 (Bankr. S.D. Fla. 1990). Any act or omission inconsistent with the fiduciary duty owed to the PACA beneficiaries - including dissipation of PACA trust assets - is unlawful and constitutes a "breach of trust." 7 U.S.C. §499b(4); 7 C.F.R. §46.46(d)(1).

  **B. Secondary Liability of Shareholders, Officers or Directors under the Perishable Agricultural Commodities Act**

Liability under PACA attaches first to the produce buyer. If, however, the buyer's assets are insufficient to satisfy the PACA trust claims, secondary liability attaches to the shareholders, officers, or directors of a corporation, who are in a position to control PACA trust assets and who breach their fiduciary

3

duty to preserve those assets. *Golman-Hayden*, 217 F.3d at 350 (5th Cir. 2000); *Sunkist Growers, Inc. v. Fisher*, 104 F. 3d 280, 283 (9th Cir. 1997). The "PACA trust, in effect imposes liability on a trustee whether a corporation or a ***controlling person of that corporation***." *Morris Okun, Inc. v. Harry Zimmerman, Inc.*, 814 F. Supp. 346 (S.D.N.Y. 1993) (emphasis added). Personal liability is imposed on the controlling person because "a corporation can act only through its agents and can thus fulfill fiduciary obligations only through its agents." *Morris Okun, Inc.*, 814 F. Supp. at 349. A person who is in the position to control the trust assets and who does not do so has breached a fiduciary duty and is personally liable under PACA. Id. at 348. See also, *Golman-Hayden*, 27 F. Supp. 2d at 723; *Sunkist Growers*, 104 F.3d at 280; *Shepard v. K.B. Fruit & Vegetables,* 868 F.Supp. 703 (E.D. Pa. 1994); *Mid-Valley Produce Corp. v. 4-XXX Produce Corp.*, 819 F.Supp. 209 (E.D.N.Y. 1993). The *Sunkist* Court specifically held that:

> [A] PACA trust in effect imposes liability on a trustee, whether a corporation *or **a controlling person of that corporation***, who uses the trust assets for any purpose other than repayment of the supplier. (emphasis added.)

*Sunkist* at 283.

In *Red's Mkt. v. Cape Canaveral Cruise Line, Inc.,* 181 F. Supp. 2d 1339 (M.D. Fla. 2002), the United States District Court for the Middle District of Florida surveyed the litany of cases addressing the issue of whether a controlling person can be held liable as a trustee under PACA. The Court noted that :

> Several cases have discussed the duties owed by PACA trustees in general terms. For instance, in

4

> *Sunkist* the Ninth Circuit noted that those "who are in a position to control PACA trust assets, and who breach their duty to preserve those assets, may be held personally liable under the Act." [*Sunkist*] 104 F.3d at 283. Recognizing that "PACA is a 'tough law,'" the Fifth Circuit has agreed with the reasoning in *Sunkist* that it is appropriate to impose personal liability on shareholders, officers, and directors of corporate buyers who are in a position to control PACA trust assets and fail to maintain the assets. *Golman-Hayden Co. v. Fresh Source Produce Inc.*, 217 F.3d 348, 350 (5th Cir. 2000) (quoting *Hawkins v. Agric. Mktg. Serv.*, 10 F.3d 1125, 1130 (5th Cir. 1993)). Additionally, in *Morris Okun, Inc. v. Harry Zimmerman, Inc.*, 814 F. Supp. 346 (S.D.N.Y. 1993), the district court found that a shareholder who was in a position to protect trust assets but failed to do so would be personally liable for the unpaid debt for produce. The court stated that "a PACA trust imposes liability on a trustee, whether a corporation or a controlling person of that corporation, who uses the trust assets for any purpose other than repayment of the supplier. This includes the use of the proceeds from the sale of perishables for legitimate business expenditures, such as the payment of rent, payroll, or utilities." [*Morris Okun, Inc.*] 814 F. Supp. at 348.

*Red's Mkt..*, 181 F. Supp. 2d at 1344 (M.D. Fla. 2002). The Court concluded that:

> In sum, case law generally holds that an individual in control of PACA trust assets may be liable for failure to preserve the *res* of the trust without regard to whether the failure was intentional or whether the individual was an otherwise responsible corporate officer.

*Id*.

Based upon the foregoing, if Ms. Watford was in a position to control the PACA trust assets of Southern Solutions and failed to maintain those assets for the benefit of PACA creditors such as the Plaintiffs, she breached her fiduciary

5

duty under PACA, rendering her personally liable to the Plaintiffs. In *Golman-Hayden,* the determination of who is "in a position to control trust assets" turned on the legal right to control the corporation. The Court found the sole shareholder "manifestly had absolute control over the corporation" – even though he may not have actually exercised that control. *Golman-Hayden*, 217 F.3d at 351. Of course, courts have also held that parties who actually exercised control of the corporation were in a position to control PACA trust assets. *Ideal Sales, Inc. v. McGriff*, 1997 U.S. Dist. LEXIS 4791 (N.D. Tex. March 27, 1997). Thus, Ms. Watford was in a position to control Southern Solutions' PACA trust assets if either: (i) she had the legal right to control Southern Solutions or (ii) she actually exercised control over Southern Solutions. If Ms. Watford was in a position to control Southern Solutions' PACA trust assets she breached her fiduciary duty to Plaintiffs if she failed to maintain sufficient PACA trust assets to pay their claims as they became due. *Golman-Hayden*, 217 F.3d at 351; *Red's Mkt.,* 181 F. Supp. 2d at 1344.

    **C. Breach of Fiduciary Duty**

In the instant action, Ms. Watford's failure to maintain PACA trust assets as required by law is sufficient to satisfy the standard for a breach of fiduciary duty. By failing to ensure that Southern Solutions paid its PACA trust Beneficiaries, Ms. Watford breached her fiduciary duty to the Plaintiff. Here, there is no evidence that Ms. Watford took any steps to pay or ensure full payment to the PACA trust beneficiaries of the PACA trust assets of Southern

6

Solutions. The law is clear that the use of trust assets for any purpose other than to pay PACA trust beneficiaries, such as Plaintiffs herein, was a violation of the debtor's fiduciary duty. *Golman-Hayden Co.*, 217 F.3d at 350.  While the evidence will likely show that Ms. Watford continuously used PACA Trust Assets for her personal gain, to pay non-PACA creditors, and to pay entities outside the produce industry, rather than the PACA creditors, such a finding of misappropriation or bad faith is not necessary for the Court to find that Ms. Watford committed a breach of her fiduciary duty to Plaintiff.  The *Red's Market* Court held that:

> Findings of misappropriation or bad faith are not essential to an imposition of individual liability upon these individual defendants who were in total control of the PACA trust assets. A simple finding that the individual failed to account for the trust assets is sufficient. Moreover, the facts do not support the individual defendants' assertion that they are blameless. Indeed, it is unlawful for a dealer to "fail to maintain the trust as required under section 499e(c)." 7 U.S.C. § 499b(4).

*Red's Mkt.*, 181 F. Supp. 2d at 1344.

In light of all of the above, it is clear that personal liability will attach to Ms. Watford under the PACA.

**II.    CORPORATE DEFENDANT'S BANKRUPCTY PETITION AND ITS EFFECT ON AN ACTION AGAINST AN INDIVIDUAL**

The subsequent issue is whether or not the automatic stay, prescribed by 11 U.S.C. § 362, prohibits the pending action against Ms. Watford, an individual, in the United States District Court for the District of Columbia.  A review of the

bankruptcy code and the case law interpreting this issue clearly indicates that the automatic stay in bankruptcy court does not inhibit Plaintiffs from moving forward against the non-bankrupt, individual defendant in District Court.

The Bankruptcy Code's automatic stay provision, 11 U.S.C. § 362(a)(1), protects bankruptcy debtors from contemporaneous judicial proceedings:

> a petition filed under section 301, 302, or 303 of this title . . . operates as a stay, applicable to all entities, of the commencement or continuation, including the issuance or employment of process, of a judicial, administrative, or other action or proceeding against the debtor that was or could have been commenced before the commencement of the case under this title, or to recover a claim against the debtor that arose before the commencement of the case under this title.

Id. The general rule is that the automatic stay in a bankruptcy case protects only the debtor and not parties that are liable with the debtor, such as co-makers and guarantors. *In re Stovall*, 209 B.R. 849, 852 (Bankr. E. D. Va. 1997); *citing*, *Credit Alliance Corp. v. Williams,* 851 F.2d 119 (4th Cir. 1988).

There is no shortage of case law specifically addressing the issue of the automatic stay as it relates to non-bankrupt co-Defendants. Many jurisdictions have held that only a debtor is included within the protective umbrella afforded by the automatic stay that arises pursuant to § 362(a)(1). Third-party defendants or co-defendants are typically not provided such protection. Therefore, lawsuits instituted against officers and directors of a corporate debtor are usually not stayed. *See Bedel v. Thompson* , 103 F.R.D. 78, 81-83 (S.D. Ohio 1984) (holding that the automatic stay was inapplicable to an action for violations of securities laws

8

instituted against former directors because the debtor was not deemed an indispensable party); *see also Credit Alliance Corp. v. Williams,* 851 F.2d at 121 (stating that the plain language of § 362(a) does not apply to non-debtors and will not be applied absent "unusual circumstances"); *In re Crazy Eddie Sec. Litig.,* 104 B.R. 582, 583 (E.D.N.Y. 1989) (ruling that "stays pursuant to § 362(a) are limited to debtors and 'do not encompass non-bankrupt co-defendants'") (quoting *Teachers Ins. & Annuity Ass'n of Am. V. Butler*, 803 F.2d 61, 65 (2d Cir. 1986)); *Cornick v. Hi Grade Cleaners, Inc.*, 595 F. Supp. 718, 720-21 (N.D. Ill. 1984) (holding that the automatic stay does not apply to claims against the debtor's non-bankrupt co-defendants)." *Ochs v. Lipson (In re First Cent. Fin. Corp.),* 238 B.R. 9 (E.D. N.Y. 1999).

In *Gray v. Hirsch (In re Gray)*, 230 B.R. 239 (S.D.N.Y. 1999), a case analogous to the one before this Court, the Plaintiffs, John Gray, Nancy Gray, and Thomas Gray, filed an action against defendant, Gerald P. Hirsch, and several business entities Hirsch controlled. The Grays claim that Mr. Hirsch fraudulently induced them to purchase unregistered securities, in violation of federal statues, state statutes, and state common law.

The question before the Court was whether the action, as against Mr. Hirsch, should be stayed during the Hirsch entities' bankruptcy. The Court definitively concluded that the action against Mr. Hirsch *should not* be stayed and that the court should consider the pending motion for partial summary judgment against Mr. Hirsch.

9

The Court found that Mr. Hirsch controlled the Hirsch entities as officer and principal. While all 15 Hirsch entities were deemed bankruptcy debtors, the Court determined that Mr. Hirsch, as an individual, was not. Therefore, the Court decided that an action against Mr. Hirsch would not be a proscribed "action or proceeding against the debtor," 11 U.S.C. § 362(a)(1), under the statute's plain meaning and the interpretation of courts in that circuit.

The Court went on to explain, in detail:

> It is well-established that stays pursuant to § 362(a) are limited to debtors and do not encompass non-bankrupt co-defendants. *Teachers Ins. & Annuity Ass'n v. Butler, et al.,* 803 F.2d 61 (2d Cir. 1986) (declining to extend stay of action against debtor partnership to its co-defendants, non-debtor individual partners). Applying *Teachers Ins. & Annuity Ass'n*, courts in this circuit regularly refuse to extend a debtor corporation's § 362 stay to its non-debtor officers and principals. See, e.g., *Variable-Parameter Fixture Dev. Corp. v. Morpheus Lights, Inc., et al.*, 945 F. Supp. 603 (S.D.N.Y. 1996) (non-debtor principal who, under state law, was debtor corporation's "alter ego"); *E.I. Du Pont De Nemours & Co. v. Fine Arts Reprod. Co., et al.*, 1995 U.S. Dist. LEXIS 7040, No. 93 Civ. 2462 (KMW), 1995 WL 312505, (S.D.N.Y. May 22, 1995) (non-debtor who was debtor corporation's president and guarantor) *Levesque v. Kelly Comm'n, Inc., et al.*, 164 B.R. 29, 30 (S.D.N.Y. 1994) (non-debtor whose two debtor corporations bore his name); *CAE Indus. Ltd., et al., v. Aerospace Holdings Co., et al.*, 116 B.R. 31, 32 (S.D.N.Y. 1990) (non-debtor former Chairman, [**8] CEO, and Director of debtor corporation); *In re Crazy Eddie Sec. Litig.*, *supra* at 584 (all non-debtor co-defendants affiliated with debtor corporation); *Ripley v. Mulroy, et al.*, 80 B.R. 17, 18 (E.D.N.Y. 1987) (non-debtor "president, sole common-stock shareholder, and controlling person" of debtor corporation). Mr. Hirsch's control over the Hirsch entities is insufficient,

>without more, for their stay to encompass this action against him.

*Gray,* 230 B.R. at 242.

The automatic stay would affect the Individual Defendant only in "unusual circumstances," as the Fourth Circuit held in *A. H. Robins Co. v. Piccinin*, 788 F.2d 994 (4th Cir. 1986).  The *A.H. Robins'* Court held that given the scope of § 362 stays, "extension of a stay to a non-debtor only 'arises when there is such identity between the debtor and [non-debtor] that the debtor may be said to be the real party defendant and that a judgment against the [non-debtor] will in effect be a judgment ... against the debtor.'" 788 F.2d at 999. *Gray,* 230 B.R. at 242. "Applying *A.H. Robins*, courts in this district have stayed actions against non-debtor officers and principals of debtor corporations, but only where the stayed actions would have posed a serious threat to the debtors' reorganization efforts." *Gray,* 230 B.R. at 243.

There is nothing in the record, at this point, demonstrating that Ms. Watford is a vital instrument in any reorganization of Southern Solutions.  As such, no special circumstances, as set forth in *A. H. Robins*, exist that would require extension of the automatic stay.  In this case, Tanikka Watford is merely a non-bankrupt co-Defendant.  Therefore she are not entitled to any protections of 11 U.S.C. § 362.

**CONCLUSION**

For the reasons set forth above, the Plaintiffs respectfully request that the Court bifurcate the present cause of action and allow the Plaintiffs to move forward against Tanikka Watford while respecting the statutory stay relating to the corporate Defendant, Southern Solutions Inc., d/b/a Southern Solutions Produce, LLC, resulting from the Voluntary Chapter 7 Petition filed in the United States Bankruptcy Court for the Middle District of North Carolina.

Respectfully submitted,

/s/ Charles H. Carpenter

| | |
|---|---|
| Lawrence H. Meuers, Esq. | |
| Fla. Bar No. 0934879 | Edward M. Andries, Esq. |
| Aaron J. Pruss, Esq. | DC Bar No. 460526 |
| Fla Bar No. 0015656 | Charles H. Carpenter, Esq. |
| Meuers Law Firm, P.L. | DC Bar No. 432004 |
| 5395 Park Central Court | Pepper Hamilton, LLP |
| Naples, FL  34109 | Hamilton Square |
| Telephone: (239) 513-9191 | 600 Fourteenth Street, N.W. |
| Facsimile:  (239) 513-9677 | Washington, DC 20005-2004 |
| apruss@meuerslawfirm.com | Tel: (202) 220-1251 |
| | Fax: (202) 220-1665 |

Attorneys for Plaintiffs